J-A07029-25                    2025 PA Super 121

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
JEFFREY DODD : No. 701 MDA 2024

Appeal from the Order Entered April 22, 2024
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0004090-2020

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

CONCURRING AND DISSENTING OPINION BY BOWES, J.: **FILED: JUNE 11, 2025**

Approximately four years after the Commonwealth charged Appellee with strangulation and simple assault, roughly thirty-eight months since defense counsel requested discovery of all documents and photographs, and following two rounds of extensive plea negotiations in 2022 and 2024, respectively, the Commonwealth relinquished to Appellee one week before trial several pieces of evidence that it just received from the complainant, including two nearly four-year-old photographs depicting the accuser's face with bloodshot eyes.

Following a hearing on Appellee's ensuing motion *in limine*, the trial court precluded the Commonwealth from presenting the photographs and other evidence.  The court reasoned

[Appellant] has a right to prepare a defense. When you wait four years to produce photographs, which I recognize you may have just received, but you have prior attorneys in your office that have an ongoing obligation to investigate and present evidence. This opens the floodgate to a whole host of issues. The Commonwealth can very easily hide behind the fact that they didn't know, and they didn't do a proper investigation. The Commonwealth has a due diligence burden. And four years is a long time, especially when this has been placed for trial multiple times before me.

N.T., 4/17/24, at 33-34. After hearing additional argument on this issue, the court continued,

There is no question that the burden is on the Commonwealth to engage in due diligence when producing information for trial. I . . . find that [Appellee] is going to be prejudiced [by] the photographs and text messages that [the accuser] had in her possession for the last four years because they weren't turned over timely. I think the [Appellee] is prejudiced by that.

We can't go through this [discovery] process and have it be fair if we're not going to ask the relevant questions as part of the investigation and due diligence. The statements by the [investigating ]officer that he didn't recall any conversations with [the accuser] and statements, frankly, made by the District Attorney that she chose not to engage with the [accuser] until immediately prior to trial, don't serve the due diligence. . . burden that's incumbent upon the Commonwealth. We can't just bury our heads in the sand and expect [the information] to pop up at the end of the day.

*Id*. at 63-64.

The learned Majority rejects the trial court's consideration of the Commonwealth's purported lack of diligence in investigating the case because diligence is not explicitly imposed by Pa.R.Crim.P. 537(B), which guides discovery in criminal litigation. Hence, it finds that the Commonwealth

complied with the rule simply by turning over the evidence immediately after obtaining it from the accuser. Majority Opinion at 8-9. I believe that the Majority's rationale disregards the actual harm Appellee suffered in this case due to the Commonwealth's delay interviewing the accuser and procuring her eleventh-hour disclosure of material evidence. Thus, I respectfully disagree with its decision to vacate the trial court order excluding the photographs from evidence. [1]

The Majority accurately summarized the relevant facts, procedural history, and standard of review. Accordingly, I do not revisit those items here. However, concerning the trial court's invocation of fair dealing in ruling on the motion *in limine*, I add only that one purpose of a motion *in limine* is "to provide the trial court with a pre-trial opportunity to weigh carefully and consider potentially prejudicial and harmful evidence." ***Commonwealth v. Padilla***, 923 A.2d 1189, 1193-94 (Pa. Super. 2007). Phrased differently, "a

---

[1] As the Majority accurately highlights, the Commonwealth also provided Appellee with three pages of text messages between Appellee and his accuser shortly after the alleged incident. Since Appellee participated in the exchange of text messages, I agree with my learned colleague's conclusion that he was not surprised by their existence regardless of any difficulty he encountered in retrieving them independently. Accordingly, I join the Majority's decision to vacate the portion of the order concerning the exclusion of the text messages between Appellee and the victim. ***See*** Majority Opinion at 9, n.3 ("We note, however, that the Commonwealth was arguably at the bigger disadvantage because Appellee sent the text messages and, as such, logically knew of their existence. For this reason, our case law dictates that Appellee cannot use the discovery rules against the Commonwealth for its failure to produce the evidence sooner.") (cleaned up) (internal citations and quotations omitted).

motion *in limine* precludes evidence that was constitutionally obtained but which is prejudicial to the moving party." **Commonwealth v. Reese**, 31 A.3d 708, 715 (Pa.Super. 2011) (citation omitted) (differentiating between motion to suppress and motion *in limine*).

From my perspective, the trial court neither abused its discretion in imparting a good faith duty of due diligence upon the Commonwealth in resolving the motion *in limine*, nor by considering the resulting prejudice to Appellee. By sanctioning the prosecution's practice of declining to interview witness until the eve of trial, the Majority permits the Commonwealth to perform an end-run around the strict requirements of the disclosure rule. Whether the Commonwealth sits on evidence for four years or simply waits four years to uncover it, the effect on the defendant is identical. In this regard, I do not believe it was error for the court to consider the Commonwealth's lack of diligence in interviewing the complainant.

As Appellee notes, the Commonwealth charged him with strangulation and simple assault. While strangulation does not require evidence of physical injury, in order to convict Appellee of simple assault pursuant to 18 Pa.C.S. § 2701(a)(1), the Commonwealth is required to prove beyond a reasonable doubt that he either caused or attempted to cause bodily injury. Consistent with the Majority's recitation of fact, both the investigating police officer and the complainant previously testified during the preliminary hearing that no such injuries occurred. **See** Majority Opinion at 1 (quoting Trial Court Opinion

at *1 ("the investigating officer testified that he observed no injuries to [the accuser, who] also testified at the preliminary hearing and she did not reference any injuries")). Appellee requested discovery of any photographs in this case and the Commonwealth provided the physical evidence it possessed at that juncture. None of that evidence apparently supported the simple assault charge. Thus, throughout the extended plea negotiations, Appellee was fully aware that the Commonwealth persisted in prosecuting the simple assault despite lacking any evidence of injury beyond the accuser's anticipated testimony. That knowledge undoubtedly affected his plea negotiations.

Then, following jury selection and with less than one week before trial, the Commonwealth discovered evidence of injury. That last-minute revelation, which was due entirely to the prosecution's practice of deferring its investigation, not only surprised Appellee on the cusp of trial, but it also undermined his prior plea negotiations. Indeed, the prosecutor conceded, "In light of the new evidence, it does strengthen my case." N.T., 4/17/24, at 39.

Conversely, Appellee's counsel indicated during argument, "An offer had been made. And had we had th[is] evidence, my client would have accepted the offer. It impacted his knowing and intelligent decision making at the time the offer was rejected." *Id*. at 20. The record does not indicate the precise terms of the prior negotiations beyond the Commonwealth's offer to reduce the grading of strangulation from a second-degree felony to a

misdemeanor. However, bolstered by the recent evidence of physical injury, the Commonwealth's revised offer was limited to an open plea to both of the instant offenses, in exchange for a recommendation that Appellee's sentence would be imposed consecutive to other unrelated offenses that he would also be required to "plea as charged." *Id*. at 39 The failure to garner the information timely, at least when the case was listed for trial in 2022, impacted Appellee's decision to reject the prior offers; now fortified with the new evidence, the Commonwealth's only offer was an open plea as part of a global agreement across multiple docket numbers unrelated to this case. *Id*. This unfair outcome is the harm that the trial court sought to remedy by granting the motion *in limine*.

While the Majority proffers a continuance as the appropriate remedy in this case, what benefit would a continuance provide Appellee at his juncture where he has already rejected the Commonwealth's plea offer based on what he believed the evidence to be, only to be confronted unexpectedly with the new evidence on the eve of trial? The harm to be cured is not that the late disclosure impacted his ability to prepare for trial. Rather, the new evidence undermined Appellee's position throughout the extended plea negotiations. That is the crux of the trial court's analysis, which I find convincing.

Overall, I believe that the Commonwealth's nominal compliance with Rule 573 was prejudicial to Appellee, specifically, and the Majority's endorsement of this practice encourages the Commonwealth to conduct its

pretrial investigations as late as possible, notwithstanding any harm that might befall a criminal defendant.

Hence, I respectfully dissent from the Majority's decision to vacate the portion of the trial court order excluding the two photographs.